UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CV-80034-ROSENBERG/REINHART

DERRICK TYRONE JENKINS,

                Petitioner,

vs.

THE ATTORNEY GENERAL OF
THE STATE OF FLORIDA,

                Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Derrick Tyrone Jenkins has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 seeking to have his state court conviction for indirect criminal contempt vacated due to an alleged violation of his First Amendment right to free speech.  ECF No. 1.  The Petition was referred to me by the Hon. Robin L. Rosenberg for a report and recommendation.  ECF No. 3.

It did not appear that Mr. Jenkins was in custody on his state court conviction when he filed his Petition, which is required for a federal court to entertain a petition under 28 U.S.C. § 2254.  I issued an Order to Show Cause directing Mr. Jenkins to explain why his Petition should not be dismissed for lack of subject matter jurisdiction. ECF No. 4.  Mr. Jenkins filed a response to my order (ECF No. 5) and the Respondent filed a reply (ECF No. 8).

Having reviewed the parties' submissions, I find that Mr. Jenkins is not

entitled to relief under § 2254 because he was not in custody when he filed his Petition; nor is he entitled to relief under the alternative procedural mechanisms he propounds.  Therefore, I RECOMMEND that the Petition be DENIED for lack of jurisdiction.  Nevertheless, if the merits were reached, I would recommend that Mr. Jenkins's conviction, and the state court's disposition of his appeal, were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  *See Wilson v. Moore*, 193 F. Supp. 2d 1290, 1291 (S.D. Fla. 2002).

## BACKGROUND

This case stems from a civil lawsuit Mr. Jenkins brought, *pro se*, in the Fifteenth Judicial Circuit of Florida against the Palm Beach County Sheriff's Office (PBSO).  Mr. Jenkins alleged that a sheriff's deputy had maliciously issued him a fraudulent citation.  ECF No. 1-2 at 1; *see also* Jenkins Declaration (ECF No. 1-4 at ¶ 3).  On December 20, 2018, The Honorable Howard Coates, Jr. entered an order dismissing the case with prejudice.  ECF No. 1-2 at 1 (citing *Jenkins v. Mitchell*, Case No. 50-2018-CA-000354).

Thereafter, Mr. Jenkins wrote an undated letter to Judge Coates expressing his displeasure with the Judge's decision; the letter is rambling and expletive-laced. ECF No. 1-3 at 126-128.  In the letter, Mr. Jenkins accuses Judge Coates of being incompetent and "a f--king hypocrite" who is "unfit to serve" and "created distrust;" the letter demands an investigation, the judge's recusal, and threatens to have Judge

Coates disqualified.  *Id.*  In the letter, Mr. Jenkins expressed his desire to have it made a "public document" so voters could "make careful decisions" when considering whether to re-elect Judge Coates.  On or around January 31, 2019, Judge Coates had the clerk's office file the letter on the court docket.  *Id.* at 94, 128.

On January 29, 2019, Judge Coates issued an Order to Show Cause as to Why Plaintiff Derrick Jenkins Should not be Held in Indirect Criminal Contempt.  ECF No. 1-3 at 19-21.  The misdemeanor case was given a new case number (2019MM001265AMB) and was assigned to The Honorable Robert Panse of the county court's criminal division.  On April 12, 2019, Judge Panse conducted a non-jury trial on the criminal contempt charge.  ECF No. 1-3 at 51, 84-123.[1]

At the trial, Judge Coates testified that another judge had already dismissed Mr. Jenkins's case against PBSO but then recused, so Mr. Jenkins's motion for reconsideration of the dismissal was assigned to Judge Coates.  *Id.* at 96.  Judge Coates held a hearing on Mr. Jenkins's motion to reconsider, and at the end of the hearing, he dismissed Mr. Jenkins's case with prejudice.  *Id.* at 96-97.  When he later received Mr. Jenkins's letter, Judge Coates considered it "a direct attack on [his] judicial ruling" that was "over the top in terms of [ ] criticism," and which because of

---

[1]   The trial was prosecuted by the State Attorney's Office for Palm Beach County, notwithstanding that office having filed a notice declining to prosecute the case on February 26, 2019.  ECF No. 1-3 at 48-49.  Although Mr. Jenkins was initially deemed not competent to represent himself at trial (*id.* at 24-29), Judge Panse questioned Mr. Jenkins before starting the trial, accepted his waiver of counsel, and permitted him to proceed *pro se.  Id.* at 87-90.

the "personal comments," would require him to recuse himself "from any further proceedings in the case, if it were to go forward." *Id.* at 97, 99.

Judge Coates testified that he still had jurisdiction over Mr. Jenkins's case when he received the letter because "it was still within the appellate period." *Id.* at 101-102. Nevertheless, Judge Coates acknowledged that "the case was closed as a result of the dismissal . . . so I would not have done anything further" unless Mr. Jenkins filed another motion for reconsideration or rehearing. *Id.* at 103.

Judge Coates testified that Mr. Jenkins's letter "required significant expenditure of judicial labor" and diverted his attention from other cases. *Id.* at 102, 104. Judge Coates testified that Mr. Jenkins "impugned [his] reputation" and "cause[d] personal harm" which also extended to the judicial system as well. *Id.* at 100.

Mr. Jenkins testified at the hearing that he believed "it's every American's constitutional right to criticize, even ridicule Judges and other participants in the judicial system," and that when he wrote the letter, he believed he "was using free speech" and that he had "no intent to cause anyone any harm." *Id.* at 108.

At the conclusion of the trial, Judge Panse found Mr. Jenkins guilty of one count of indirect criminal contempt and sentenced him to thirty days in jail, six months' probation, and a $500 fine. *Id.* at 119, 121. Judge Panse issued his findings of fact and conclusions of law from the bench. Relevant excerpts from the transcript of Judge Panse's decision are as follows:

Comment, however forthright, is one thing.  Intimidation with respect to specific matters still at judicial suspense is quite another. The purpose of contempt powers is to protect immediate litigants and the public from the mischievous danger of an unfree or coerced tribunal. The power should be invoked only where the adjudicatory process may be hampered or hindered . . .

*Id.* at 112-113.

[T]his Court finds that the Defendant, Derrick Jenkins' impact through his communication . . . constitutes a clear and present danger to the orderly administration of justice.  The Defendant's profanity and derogatory comments directed to Judge Howard Coates and published to the public . . . diminishes the integrity and the authority of the Court and was intended by the Defendant to do so.

*Id.* at 114.

The Court also finds that this was still an open case based on the filings that the Court has taken judicial notice of and that were referenced here today.  It is clear that Mr. Jenkins' threats and filing constituted a serious and imminent threat to the administration of justice . . . Defendant's request that the Court change its ruling or that Judge Coates issue other rulings, those threats constituted a serious and imminent clear and present danger to distort and coerce Judge Coates into his decisionmaking . . . Judge Coates [was caused] to needlessly review the Court file based on the contemptuous filing of Mr. Jenkins . . . All of this took away from consideration of other cases and also seriously impacted his ability to perform his judicial duties . . .

*Id.* at 115-116.

Judge Panse cited *O'Brien v. State*, 248 So. 2d 252, 255 (Fla. Dist. Ct. App. 1971), noting that the case also dealt with a letter sent to a judge.

The Court [in *O'Brien*] found that it constitutes indirect contempt of court where a letter is intended or calculated to embarrass, hinder or obstruct the Court in the administration of justice or which is calculated to lessen its authority or its dignity, and that constitutes contempt . . . The Court is also permitted in determining whether indirect criminal contempt occurred to consider whether or not the alleged offending act

was such as to reasonably result in bringing the Judge of the Court into contempt, disrespect or shame in the public eye. The Court finds that Mr. Jenkins' actions in his communications . . . in fact, falls into that category . . . [T]he bounds of speech are not limitless, and in order to protect the integrity of the judiciary and the proper administration of justice, it is necessary that this Court today find, and I do find that Derrick Jenkins is in direct criminal contempt of court.

ECF No. 1-3 at 116-118.

Mr. Jenkins appealed his conviction to the Fourth District Court of Appeal, raising, among other issues, a First Amendment claim.  ECF No. 1-7.  Citing *O'Brien*, a divided appellate panel affirmed *per curium* Judge Panse's decision.  In her dissent, Judge Warner stated that she was "inclined to agree with Judge Reed's dissent" in *O'Brien* which stated:

[A] very careful distinction must be made between communications which are merely personally offensive to a judge and those which may have a genuinely degrading effect on the performance of his official duties. The former should never be considered as contemptuous. The latter, when they take the form of out-of-court comment regarding a pending judicial proceeding, may be held contemptuous only where the evidence indicates that they present a clear and present danger to the proper administration of justice.

*Jenkins v. State*, 321 So. 3d 839, 840 (Fla. Dist. Ct. App. 2021) (Warner, J., dissenting) (quoting *O'Brien*, 248 So. 2d at 258).[2]  Judge Warner reasoned that "in this case [Judge Coates] had entered a final order of dismissal and the rehearing period had ended [therefore], there were no further proceedings before [Judge Coates and] the

---

[2] Judge Warner dissented on both procedural and substantive grounds. The procedural issue was whether Judge Panse lacked subject matter jurisdiction because he was a County Court judge who had not been properly appointed to adjudicate an alleged contempt against the Circuit Court.

letter could not be interpreted as attempting to obstruct the judge in the performance of his duties . . . [and] it should not be punishable by the immense power of contempt." *Id.* at 840-41. Judge Warner concluded, "given the circumspection required in the use of the contempt power, I agree with Judge Reed, when he wrote: '[The letter] could and should have been disposed of by relegation to the trash bin. The appellant's letter was clearly unfair and irrational, but as a matter of law it was not contempt.'" *Id.* at 841 (quoting *O'Brien*, 248 So. 2d at 258 (Reed, J., dissenting).

The United States Supreme Court denied Mr. Jenkins's petition for writ of certiorari on January 10, 2022. *See Jenkins v. Fla.*, 142 S. Ct. 774 (2022).

## DISCUSSION

*A.  28 U.S.C. § 2254*

Mr. Jenkins seeks to have his conviction vacated under 28 U.S.C. 2254, but pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court can only entertain an application for a writ of habeas corpus by a state prisoner who alleges that he is in state custody "in violation of the Constitution or laws or treaties of the United States." *Dorcelus v. Nobles*, No. 15-61505-CIV, 2018 WL 8899401, at *5–6 (S.D. Fla. Sept. 17, 2018) (citing 28 U.S.C. § 2254(a)).

Thus, "[t]he first showing a § 2254 petitioner must make is that he is 'in custody pursuant to the judgment of a State court.'" *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 401 (2001) (quoting 28 U.S.C. § 2254(a)). The Supreme Court has stated that the "in custody" requirement of Section 2254 means "that the habeas

petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Birotte v. Sec'y for Dep't of Corr.*, 236 F. App'x 577, 578 (11th Cir. 2007) (quoting *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989)). "Accordingly, where a petitioner's sentence has fully expired, he does not meet the 'in custody' requirement and the district court lacks subject matter jurisdiction." *Id.* at 578-79.

Once a petitioner has satisfied the threshold showing that he is "in custody," the court proceeds to the merits of the petition. Section 2254 provides that a federal court shall not grant an application for a writ of habeas corpus unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). This standard is "difficult to meet," and "highly deferential" in that it "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's

8

decision is not contrary to or an unreasonable application of Supreme Court precedent unless that precedent "squarely addresses the issue" or gives a "clear answer to the question presented" in the case before the state court. *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008). "A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting *Williams*, 529 U.S. at 411).

*1. The "In Custody" Requirement and the Actual Innocence Exception*

Mr. Jenkins appears to acknowledge that his state court sentence is "fully expired" and thus, he is not "in custody" for purposes of § 2254. ECF No. 5 at 2. *See Diaz v. State of Fla. Fourth Jud. Cir. ex rel. Duval Cnty.*, 683 F.3d 1261, 1264 (11th

Cir. 2012).[3]  Nevertheless, Mr. Jenkins argues that the United States Supreme Court has "recognized an exception to the 'in custody' requirement for compelling claims of actual innocence that are coupled with a lack of available forum for redress."  ECF No. 5 at 3 (citing *Lackawanna Cnty Dist. Att'y v. Coss*, 532 U.S. 394, 405 (2001).  Mr. Jenkins argues, "In the wake of *Coss*, federal courts have recognized three possible exceptions that would allow a federal court to review a state conviction despite the sentence being fully expired: 1) where the conviction was obtained without the benefit of counsel; 2) where a state court, without justification, refuses to rule on a constitutional claim that has been properly presented; and, 3) where subsequently obtained compelling evidence demonstrates actual innocence."  ECF No. 5 at 3-4 (citing *Abdus-Samad v. Bell*, 420 F.3d 614, 630 (6th Cir. 2005) and *McGowan v. Roe*, 128 Fed. Appx. 35, 36 (9th Cir. 2005)) (internal quotations omitted).  Mr. Jenkins contends that the third exception applies to his case because he is actually innocent of the criminal contempt charge for which he was convicted. ECF No. 5 at 4.[4]

---

[3]  I reject Mr. Jenkins's alternative argument that the "in custody" requirement can be satisfied because of other "significant restraints on his liberty that he continues to suffer" as a result of his conviction, such as embarrassment, reputational harm, professional consequences and a chilling effect on his speech.  ECF No. 5 at 6-7.  *See Maleng v. Cook*, 490 U.S. 488, 491 (1989) (a petitioner is no longer "in custody" once his sentence has fully expired; "collateral consequences" of an expired conviction "are not themselves sufficient to render an individual 'in custody'"); *see also Clements v. Florida,* 59 F.4th 1204 (11th Cir. 2023) (sex offender registration and reporting requirements did not render person "in custody" for purposes of § 2254).

[4]  Mr. Jenkins does not address the other two exceptions.

In *Rozzelle v. Sec'y, Florida Dep't of Corr.*, 672 F.3d 1000 (11th Cir. 2012), the Eleventh Circuit discussed the three ways in which federal habeas petitioners raise claims of "actual innocence." *Dorcelus*, 2018 WL 8899401, at *12 (citing *Rozzelle*, 672 F.3d at 1010-12).   The first type of actual innocence claim is raised when the petitioner's innocence serves as the constitutional basis of the habeas petition, but this type of petition can only be granted in capital cases.  *Id.* at 1010 (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007)).   The other two types of actual innocence claims are not "freestanding," but instead serve "as a 'gateway' to get the federal court to consider claims that the federal court would otherwise be barred from hearing."  *Rozzelle*, 672 F.3d at 1011 (citing *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)).  The second type of actual innocence applies when "[the] petitioner's actual innocence serves as a gateway to consideration of constitutional claims procedurally defaulted in state court, such as failure to exhaust state remedies [and] failure to satisfy state filing requirements."  *Id.*  In the third type of actual innocence claim, "a habeas petitioner claims his actual innocence should serve as a gateway to consideration of constitutional claims time-barred under AEDPA's one-year limitation period."  *Rozzelle*, 672 F.3d at 1011 (citing *Johnson v. Florida Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008)).

In *Coss,* the case upon which Mr. Jenkins's claim hinges, the Supreme Court previewed the third type of actual innocence claim later discussed in *Rozzelle,* observing that a defendant's failure to obtain timely review of a constitutional claim

is not always his fault.  *See Coss,* 532 U.S. at 405.  The Supreme Court suggested that in certain circumstances, an otherwise untimely petition might be permitted if there was "compelling evidence that [the defendant] is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." *Id.*  Contrary to Mr. Jenkins's claim, *Coss* does not recognize actual innocence as an exception to § 2254's "in custody" requirement.

Thus, I find that the actual innocence exception proffered by Mr. Jenkins is inapplicable here.  The situation contemplated in *Coss* does not extend to this case where the petition was timely-filed, there was no newly discovered evidence, and the obstacle is that Mr. Jenkins is not in custody.  Mr. Jenkins has not cited any cases where a finding of actual innocence was sufficient to overcome this threshold showing and permit a federal court to review the state court conviction of a petitioner whose sentence was fully expired.  Given that Mr. Jenkins is not in custody and no exception to this § 2254 prerequisite applies, the Court lacks jurisdiction to vacate Mr. Jenkins's conviction.

2. *Merits*

The "in custody" requirement is jurisdictional.  *Clements v. Florida,* 59 F.4th at 1209.  So, if the District Court agrees that Mr. Jenkins is not in custody, the Petition must be dismissed for lack of jurisdiction.  In the interest of completeness, however, I will address the merits.

I note that twenty years ago, another federal judge in this District addressed

12

a similar petition seeking habeas corpus relief under § 2254 from a state court criminal contempt conviction.  In *Wilson v. Moore*, 193 F. Supp. 2d 1290 (S.D. Fla. 2002) (J. Moore), the petitioner sent a letter which the court characterized as "insulting but not threatening," to the state court judge who presided over his criminal trial.  The trial judge recused himself from the case before sentencing; the letter was sent after the recusal but during the pendency of the appeal.  *Id.* at 1291. The state court found that the statements in the letter "were calculated to embarrass the Court and to lessen the Judge's authority and dignity," and concluded that this was sufficient to convict the petitioner of criminal contempt.  *Id.*

Upon consideration of the federal habeas corpus petition, Judge Moore vacated the contempt conviction, finding that it and the appellate court's affirmance which cited only *O'Brien*, "were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  *Id.* (citing 28 U.S.C. § 2254(d)).[5]

In *Wilson*, Judge Moore provided a history of Supreme Court precedent on the issue.

---

[5] Interpreting the "unreasonable application" provision, the Supreme Court has held that "A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Wilson*, 193 F. Supp. 2d at 1293–94 (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, (2000)).

> It is well-established that there must be a "clear and present danger of the obstruction of justice" before out-of-court speech may be punished -- even when the matter in question is still pending before the court. *See, e.g., Craig v. Harney*, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947). Stated differently, the Supreme Court has also said that such speech may only be punished where it "creates a danger of imminent and substantial harm [to the administration of justice]." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

*Wilson*, 193 F. Supp. 2d at 1291-92.

Judge Moore noted that in *Craig v. Harney*, newspaper employees were held in contempt for publishing news articles that gave an "unfair" report of what had transpired before a judge, while the matter was still pending before the court. *Wilson*, 193 F. Supp. 2d at 1292 (citing *Craig*, 331 U.S. at 378). The Supreme Court reversed the conviction, holding that "the power to punish for contempt [requires] a more substantial showing" than simply comments regarding the competence of a judge in handling a case. *Id.* Rather, the court must ensure that the speech created "an imminent and serious threat" to the administration of justice. *Id.*

Judge Moore also pointed to *Pennekamp v. Florida*, 328 U.S. 331 (1946), where the Supreme Court applied the "clear and present danger to the administration of justice" standard to reverse a contempt conviction based on newspaper editorials that were critical of Miami judges' attitudes towards criminal defendants. The Supreme Court observed that:

> Certainly this criticism of [a] judge's inclinations or actions in these pending nonjury proceedings could not directly affect such administration. This criticism of his actions could not affect his ability to decide the issues. *Here there is only criticism of judicial action already taken, although the cases were still pending on other points or might be*

> *revived by rehearings.* For such injuries, when the statement amounts
> to defamation, a judge has such remedy in damages for libel as do other
> public servants.

*Wilson*, 193 F. Supp. 2d at 1292 (quoting *Pennekamp*, 328 U.S. at 348) (emphasis

added).

Finally, Judge Moore considered the seminal case, *New York Times Co. v.
Sullivan*, 376 U.S. 254 (1964), in which the Supreme Court noted:

> Where judicial officers are involved, this Court has held that concern for
> the *dignity and reputation of the courts does not justify the punishment
> as criminal contempt of criticism of the judge* or his decision. Such
> repression can be justified, if at all, only by a clear and present danger
> of the obstruction of justice.

*Wilson*, 193 F. Supp. 2d at 1292 (quoting *New York Times*, 376 U.S. at 272-73

(emphasis added).  *See also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991)

(rejecting disciplinary proceedings against attorney who held a press conference after

the indictment of his client, the Court observed that the "judicial system, and in

particular our criminal justice courts, play a vital part in a democratic state," and the

attorney's speech critical of the prosecution was "classic political speech").

The *O'Brien* court appears to acknowledge the inherent tension when

distinguishing contemptuous statements from those protected by the First

Amendment.  *O'Brien*, 248 So. 2d at 257 ("We are not unaware of those decisions

relating to the First Amendment guarantees of free speech and press.") (citing

*Dawkins v. State*, 208 So. 2d 119, 123–24 (Fla. Dist. Ct. App. 1968) ("We are not

unacquainted with the wide latitude which has been accorded our citizenry to speak

their minds under the protective cover of the First Amendment, and this is as it should be.  No judicial officer should be permitted to resort to the power to hold one in contempt as a device by which to stifle criticism or fair comment on the manner in which his judicial labors are performed.").  But, ultimately, the *O'Brien* court found itself "unable to equate a letter reflecting upon the motives and integrity of the court written directly to the court in connection with matters under consideration as even being remotely related to those situations involving First Amendment guarantees contemplated by *Pennekamp*."  *O'Brien*, 248 So. 2d at 257 ("this line of [First Amendment] cases has no application whatsoever to the type of communication . . . under consideration.").

I find *Wilson* to be the correct analysis of the constitutional question.  For the following reasons, I would find that the state court's rulings were an unreasonable application of clearly established federal law.

Here, as in *Wilson*, the Florida trial court and appellate court erred in failing to apply binding Supreme Court precedent, "instead relying exclusively upon the case *O'Brien v. Florida*, 248 So. 2d 252 (Fla. Dist. Ct. App. 1971), in upholding the contempt conviction," even though "the *O'Brien* case permits a contempt conviction for critical speech sent to a judge where the speech merely 'tended to degrade the court or the judge as a judicial officer' -- a patently less stringent standard than the clear and present danger test." *Wilson*, 193 F. Supp. 2d at 1293.

Judge Panse's decision, and the appellate court's affirmance, are flawed for several reasons. First, as Judge Moore emphasized in *Wilson*, it is irrelevant to the contempt inquiry whether a case is still pending when the offensive communication was sent.  Indeed, *Craig*, *Pennekamp*, and *Gentile* all involved speech critical of a legal proceeding "then pending," but that fact did not render the speech unprotected by First Amendment guarantees.  *Wilson*, 193 F. Supp. 2d at 1294.  On the contrary, the Supreme Court applied the "clear and present danger" standard in each of those cases.  *Wilson*, 193 F. Supp. 2d at 1294.  Therefore, Florida's emphasis on a case's procedural posture in analyzing whether speech is contemptuous "is clearly without merit."  *Id.*

Second, even if the procedural posture of a case was a relevant consideration, Judge Panse legally erred by concluding that Mr. Jenkins's case was still pending when he sent his letter to Judge Coates.  As Judge Warner concluded in her dissent, "there were no further proceedings" before Judge Coates, and so Mr. Jenkins's letter "could not be interpreted as attempting to obstruct the judge in the performance of his duties."  *Jenkins*, 321 So. 2d at 840.  Contrary to Judge Panse's finding, Mr. Jenkins's case was no longer pending at that time Mr. Jenkins's letter was received; Mr. Jenkins's lawsuit had already been dismissed with prejudice, so there was no risk that the letter might be an imminent or serious threat to the administration of justice, let alone "coerce" Judge Coates' decisionmaking.  *See Wilson,* 193 F. Supp. 2d at 1294 ("In *Pennekamp*, the Supreme Court expressly held that criticism of judicial actions

17

already taken "could not affect [the judge's] ability to decide the issues.") (quoting *Pennekamp*, 328 U.S. at 348-49).

Given Judge Panse's unreasonable application of the clear and present danger standard, I must also consider the alternative legal basis Judge Panse gave for Mr. Jenkins's conviction – that Mr. Jenkins's letter might bring Judge Coates into "disrespect or shame in the public eye." The application of this standard is in direct contradiction of Supreme Court precedent and is "patently less stringent" than the clear and present danger test required by the Supreme Court. *Wilson*, 193 F. Supp. 2d at 1293. Although this standard was deemed an acceptable alternative for a contempt conviction by the Florida appellate court in *O'Brien* (which acknowledged that there "may be some doubt as to whether the letter in question tends to obstruct or to interfere with the administration of justice"), it is inconsistent with United States Supreme Court precedent. Indeed, "whenever faced with out-of-court speech that is critical of the judiciary, the Supreme Court has been scrupulous in requiring a showing more substantial than that the speech 'tended to' or was 'calculated to' embarrass a judge." *Wilson*, 193 F. Supp. 2d at 1294 (collecting cases). Therefore, the state court unreasonably applied a lesser First Amendment standard than United States Supreme Court precedent required.

### B. Alternative Forms of Relief

As an alternative to § 2254, Mr. Jenkins urges the Court to afford him relief by construing his filing as a petition for a writ of error *coram nobis* or a writ of *audita*

*querela.* ECF No. 5 at 8-10. Neither of these is a remedy available to Mr. Jenkins.

To be entitled to a writ of error *coram nobis*, a petitioner must show that "there is and was no other available avenue of relief," and that the error alleged "involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular or invalid." *Young v. Warden, FCC Coleman*, 508 F. App'x 918, 920 (11th Cir. 2013) (quoting *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). "A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer "in custody," as is required for federal habeas corpus relief." *Linares v. Fla.*, 2012 WL 12861086, at *4 (S.D. Fla. July 9, 2012) (citing *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002)). However, "coram nobis is not available in federal court as a means of attack on a state criminal judgment." *Young*, 508 F. App'x at 920 (quoting *Theriault v. Miss.*, 390 F.2d 657, 657 (5th Cir. 1968). *See also Linares*, 2012 WL 12861086, at *5 ("the general rule is well-established that a collateral attack upon a state conviction and sentence must be brought pursuant to § 2254 . . . Coram nobis relief is not an adequate remedy nor should it act to circumvent the AEDPA's . . . 'in custody' requirement.").

Similarly, a writ of *audita querela* is unavailable to Mr. Jenkins.[6] "The

---

[6] Audita querela is Latin for "the complaint having been heard," and was an ancient writ used to attack the enforcement of a judgment after it was rendered. *United States v. Holt*, 417 F.3d 1172, 1174 (11th Cir. 2005) (citing Black's Law Dictionary 126 (7th ed. 1999)).

common law writ was typically employed by a judgment debtor in a civil case against the execution of a judgment because of some defense or discharge arising *subsequent to* the rendition of the judgment or the issue of the execution." *United States v. Holt*, 417 F.3d 1172, 1174 (11th Cir. 2005) (emphasis added).  For a writ of *audita querela,* there must be "some unanticipated circumstance arising post-judgment [which makes] continuing enforcement of the judgment unfair." *Rawlins v. Kansas*, 714 F.3d 1189, 1193 (10th Cir. 2013).  Here, Mr. Jenkins's First Amendment defense was available to him before his conviction and, in fact, he argued it at his trial.  Thus, he is not entitled to a writ of *audita querela.*

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that the District Court **DENY** the Petition (ECF No. 1).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers this 17th day of July, 2023, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE